UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2007 FEB -5 AM 9: 42

CLERK _Rw____
SO. DIST. OF GA.

UNITED STATES

v.                              406CR250

DAVID SAMUELS, JR.

## O R D E R

Prosecuted for violating 18 U.S.C. § 922(g)(1) (Possession of Firearm by Convicted Felon), doc. # 1, *as amended* 8/31/06, defendant David Samuels, Jr. moves the Court to suppress the post-arrest statements that he gave to law enforcement. Doc. ## 18, 28, 38. In a Report and Recommendation (R&R), the Magistrate Judge (MJ) recommends that the Court deny defendant's motion as unsupported. Doc. # 47. Samuels Objects. Doc. # 50.

Following a hearing, the MJ found that

[d]efendant was arrested by Savannah-Chatham County Metropolitan Police Officer Grogan on [3/8/06] and charged with possession of a firearm and ammunition by a convicted felon. Doc. 1. After spotting defendant exit a pickup truck and hurriedly depart in another vehicle, police discovered a marijuana blunt in the ashtray of the pickup and subsequently arrested defendant. Upon further inspection of the pickup, officers found defendant's Georgia identification card, a bag of marijuana in the glove compartment, and a loaded Tek-9 machine pistol in the rear of the truck. After his *Miranda* rights were read to him, defendant asked repeatedly what had been found in the truck. When Officer Grogan stated that he had found a marijuana cigar and a bag of marijuana, defendant stated "I know you found that Tek-9" and admitted that he knew the gun

was in the vehicle but explained that it was "registered to" and owned by his cousin. Defendant did not appear to Officer Grogan to be intoxicated or laboring under any sort of disability.

Following his arrest, defendant was transported to West Chatham Police Annex, where he was again advised of his constitutional rights by Agent McCormick. Defendant executed a waiver of his rights and indicated that he wanted to talk to the agent. Doc. 37, Ex. 1. After providing an oral statement, defendant handwrote a brief statement on the back of a "voluntary statement" form explaining that he obtained the firearm from his cousin "for protection" because "the Boyz" were looking for him. Gov't Exs. 14, 15. Defendant never requested any aid or comforts during his interview and appeared to be alert and sober.

Doc. # 47 at 2-3.

Based on these facts, the MJ recommended that this Court deny defendant's suppression motion. *Id.* at 3-5. Samuels Objects to the R&R, contending that (a) the MJ erred in refusing to entertain his argument that "there was no evidence to corroborate the crimes at issue other than the confession" (the MJ posited, he says, that only a district judge could reach this argument); (b) because the officers' conflicting testimony failed to establish that Samuels was sitting in the truck (at most, he was "at the door or in the doorway" of the truck), the mere discovery of the marijuana blunt in the truck's ashtray gave the police

no basis to arrest him. Not only was there no evidence he had been sitting in the vehicle and smoking but there was no evidence he had title, possession or control of the vehicle.

Doc. # 50 at 2. Furthermore, he contends, merely explaining to the police that the gun was registered to defendant's cousin is evidence of knowledge of the *existence* of the gun but not of Samuels's *possession*. *Id.* at 2-3.

To that end, the Government has not charged Samuels with marijuana possession, he has never owned the truck, the police did not find his fingerprints on the gun, and the defendant did not run away when police approached the truck. *Id.* at 3. Nor did either officer testify that Samuels smelled of marijuana. *Id.* Finally, he insists, the police searched the vehicle without a warrant and found the gun in an area to which others had equal access. *Id.* at 3-5.[1]

The problem for Samuels is that he disclaims ownership of the truck, so he has no standing to raise any Fourth Amendment claim based on the warrantless search. *See, e.g., Rakas v. Illinois,* 439 U .S. 128, 148 (1978) (passengers in automobile they did not own could not challenge search because their own Fourth Amendment rights were not violated); *U.S. v. Mosley,* 454 F.3d 249, 253 (3rd Cir. 2006) ("Passengers in cars, unlike owners or licensees, have no reasonable expectation of privacy in the interior of the vehicle in which they are riding"). Thus, any discussion about a "warrantless" search of the truck is pointless.

Samuels also overlooks the legion of cases showing that it takes very little "hurried" or "furtive" conduct to support reasonable suspicion to stop and question someone, especially if plain-view (*e.g.,* a marijuana blunt) crime evidence is nearby. Indeed, outside of the home and "out on the road," there now is at most a minimal expectation of privacy left, which is why courts routinely credit even the flimsiest of law enforcement reasons for stopping and detaining/questioning people.

Consider this scenario: the police mount an operation in which they erect a fake "drug checkpoint" (which are flatly illegal under *Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)) and then stake out the highway exit just before the fake checkpoint, videotape all vehicles exiting there, and pull over any vehicle that violates a traffic law (for example, failing to signal at the exit turn). The practice was upheld [last] year in *United States v. Rodriguez-Lopez,* 444 F.3d 1020 (8th Cir.2006). More famously, in *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), the Supreme Court reversed the Ninth Circuit's determination that a Border Patrol officer had gone too far in basing a traffic stop of a family van on his observation that the kids had waved at him "mechanically."

*Mosley,* 454 F.3d at 252 n. 4; *see also Draper v. Reynolds,* 369 F.3d 1270, 1275-76 (11th Cir. 2004) (deputy sheriff had probable cause to stop motorist's truck because *tag light* on truck was *not adequately illuminated* as required by Georgia law).

"Mechanically," "hurriedly," "furtively," "suspiciously" (etc.) -- these are all, eye-of-the-beholder, highly elastic terms that figure into

---

[1] Defense counsel properly reminds the Court that he is operating without benefit of a hearing transcript. Leave is granted to renew this Objection *if,* upon receipt of the transcript, counsel in good faith believes that new, outcome-altering facts derived from it are brought to the Court's attention.

much police testimony and many a judicial ruling denying suppression.

The "hurriedly" term applies here. The police saw Samuels exit the truck and hurriedly depart in another vehicle. They stopped and Mirandized him. He then made damaging admissions when he tried to convince the police that the Tek-9 belonged to his cousin. Of course, the police were entitled to disbelieve him, as will be a jury in the trial of this case. The police (and now the prosecution, and potentially a jury) are also entitled to believe that Samuels used gloves or other means to keep his fingerprints off the gun, but still possessed it actually or constructively, if only because "the Boyz" were "looking for him."

For that matter, flight or other "hurried" or "furtive" movement can constitute demeanor evidence of knowledge and thus guilt.[2]  That

---

[2] Consider this gun-possession case, where the defendant unsuccessfully challenged the evidentiary sufficiency of his conviction on appeal:

> Knowledge may be proved by circumstantial evidence, and the government did present evidence from which the jury could have inferred that [defendant] Maloney was aware of the items in the back seat area of the car, including the firearm. Sergeant Steve testified that when he was following the Chevrolet, he saw quick and unusual movements by the driver of the car, thus permitting an inference that the driver may have been trying to hide an object in the back seat. The shotgun was found in the same area of the car with Maloney's clothing and with the pellet gun, which Maloney admitted carrying earlier in the day. Maloney continually sought to evade law enforcement, first by failing to stop, then by exiting his vehicle and fleeing into the woods, and later by giving a false name to police. He admitted knowing that there were

demeanor evidence supplied reasonable cause to detain, question (and thus elicit more evidence), and eventually arrest him. Defendant has simply failed to show that any Fourth or Fifth Amendment lines have been crossed here, or that the MJ erred.

Finally, Samuels's evidentiary sufficiency challenge -- that "there was no evidence to corroborate the crimes at issue other than the confession" (the MJ posited, he says, that only a district judge could reach this argument) -- is overruled as frivolous. Defendant has not moved to dismiss the indictment on evidentiary insufficiency grounds (nor would such a motion have any legs to it), so the issue was not properly before the MJ in the first place.

Accordingly, the Court **ADOPTS** the Report and Recommendation (doc. # 47) and **DENIES** defendant David Samuels, Jr.'s suppression motion. Doc. ## 18, 28, 38.

This 5 day of February, 2007.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

"things" in the car that led him to flee.

*U.S. v. Maloney*, 466 F.3d 663, 667 (8th Cir. 2006). Conduct plus generic admissions about "things" can be combined by the factfinder to return a guilty verdict. *See also U.S. v. Johnson*, 470 F.3d 1234, 1238 (8th Cir. 2006).